# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ADAM WAINBERG, | CIVIL ACTION |
| --- | --- |
| Plaintiff, | |
| v. | |
| DIETZ & WATSON, INC. | NO. 17-2457 |
| Defendant. | |

DuBois, J.                                                                                                        November 28, 2017

## **M E M O R A N D U M**

### I.  INTRODUCTION

In this suit arising under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. §§ 951–63, and Pennsylvania common law, plaintiff asserts claims against his former employer, Dietz & Watson, Inc., for disability discrimination under the ADA and PHRA, retaliatory termination for requesting accommodation under the ADA and PHRA, and wrongful discharge under Pennsylvania common law for filing a state worker's compensation claim.  Before the Court is defendant's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the First Amended Complaint alleges sufficient factual matter to state a claim for relief that is plausible on its face, defendant's Motion is denied.

### II.  BACKGROUND

The facts set forth below are drawn from plaintiff's First Amended Complaint.  The Court construes that complaint in the light most favorable to the plaintiff, as it must in a motion to dismiss.  The facts set forth in the First Amended Complaint may be summarized as follows:

Plaintiff was employed by defendant as a welder and maintenance employee from around June 16, 2014, until his termination on or around June 4, 2015. Am. Compl. ¶¶ 10–11. During this time, plaintiff maintained a satisfactory job performance rating. *Id.* ¶ 11.

On June 2, 2015, plaintiff sustained an injury while repairing a meat cart. *Id.* ¶ 12. That same day, plaintiff informed defendant he was suffering from severe abdominal pain and was having difficulty bending and standing. *Id.* ¶ 12. That day, defendant's company physician examined plaintiff and "completed paperwork necessary to file a Worker's Compensation claim." *Id.* ¶¶ 12–13. In the paperwork, the company physician described plaintiff's impairment as "Hernia, pending diagnosis." *Id.* ¶¶ 13. As an accommodation for plaintiff's impairment, the company physician placed plaintiff on light duty work. *Id.* ¶¶ 12, 14.

Two days later, on or around June 4, 2015, defendant "unjustifiably" issued plaintiff a written reprimand for "working unsafely" while repairing the meat cart and terminated plaintiff before he was able to obtain a formal diagnosis of his impairment. *Id.* ¶ 16. Plaintiff contends that defendant does not maintain written procedures for repairing meat carts and that plaintiff's actions were consistent with the practices of other employees. *Id.* ¶ 17. According to plaintiff, no other employees were reprimanded or terminated for repairing meat carts in the same manner. *Id.*

Plaintiff filed his first Complaint on May 31, 2017. Defendant filed a Motion to Dismiss the Complaint for Failure to State a Claim on July 26, 2017, after which plaintiff filed his First Amended Complaint, mooting defendant's Motion to Dismiss. The First Amended Complaint sets forth five claims: disability discrimination under the ADA, retaliation for requesting a reasonable accommodation under the ADA, disability discrimination under the PHRA, retaliation for requesting a reasonable accommodation under the PHRA, and wrongful discharge

under Pennsylvania common law for filing a worker's compensation claim. Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint on August 16, 2017. Plaintiff filed a response on August 30, 2017. Defendant's Motion is now ripe for decision.

## III. LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint," not the merits. *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 557 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

## IV. DISCUSSION

In the First Amended Complaint, plaintiff asserts claims under the ADA and PHRA for disability discrimination and retaliation for requesting an accommodation and a claim under Pennsylvania common law for retaliation for filing a worker's compensation claim. In its Motion, defendant first argues that plaintiff's disability discrimination claims under the ADA and PHRA must be dismissed because his claimed impairment does not qualify as a disability. It is defendant's position that a hernia does not qualify as a disability because it is temporary and

does not substantially limit a major life activity. Defendant also argues that plaintiff has not alleged facts showing that similarly situated individuals were treated differently. Finally, defendant claims that plaintiff's retaliation and wrongful discharge claims under the ADA, PHRA, and Pennsylvania common law must be dismissed because he has not alleged facts showing a causal nexus between either a protected activity or the filing of his worker's compensation claim and his termination.

      **A.     Disability Discrimination**

      *1. Disability Under the ADA*

Defendant first argues that "because a hernia is temporary, can be corrected by surgery, and does not substantially limit a major life activity, a hernia is anyway not a disability under the ADA." Doc. No. 12-1 at 9. To state a prima facie case of discrimination under the ADA, "a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination."[1] *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). A plaintiff is "disabled within the meaning of the ADA" if he satisfies the requirements of one of three statutory prongs: (1) he has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) he has "a record of such an impairment;" or (3) he has been "regarded as having such an impairment." 42 U.S.C. § 12102(1).

---

[1] Defendant states that plaintiff must also show that "a person not within the protected class was treated more favorably." Doc. No. 12 at 7 (citing *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 936 (3d Cir. 1997)). Not only has the Third Circuit expressly rejected this as a required element in a discrimination case, it did so in the opinion cited by defendant. *Matczak*, 136 F.3d at 939 ("By holding that favorable treatment outside the protected class is an 'alternative' element to a prima facie case, we made clear that this element can be present but by no means must be present.").

4

The Court first addresses defendant's argument that a temporary impairment may not constitute a disability. The Court rejects this argument with respect to the "actual disability" and "record of" prongs of the ADA. Defendant's argument is not based on current law. *Butler v. BTC Foods, Inc.*, No. 12-0492, 2014 U.S. Dist. LEXIS 11286, at *8 (E.D. Pa. Jan. 30, 2014). In 2008, Congress passed the ADA Amendments Act ("ADAAA") to "expressly reject[] the standard that had been embraced by courts stating that . . . the ADA need[ed] to be interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* Following passage of the ADAAA, the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting," and such a "transitory and minor" impairment may still qualify under the "actual disability" or "record of" prongs of the ADA. 29 C.F.R. 1630.2(j)(1)(ix); *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 881 (N.D. Ill. 2014). Consequently, the temporary nature of a hernia is no bar to plaintiff being disabled under "actual disability" or "record of" prongs of the ADA.

Defendant cites a number of cases to support its contention that temporary impairments may not qualify as a disability under the ADA. Each of these cases, however, relies on the more rigorous standard of the ADA prior to its amendment in 2008. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Jones v. United Parcel Service*, 214 F.3d 402, 407 (3d Cir. 2000); *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 n.2 (3d Cir. 2010) ("The ADA was amended in 2008 . . . . The parties here have not argued that these amendments have retroactive effect. The citations in this opinion are to the statute and regulations as they existed during the events in question."). This more demanding standard has been rejected by Congress and no longer applies to the "actual disability" and "record of" prongs of the ADA. *Butler*, 2014 U.S. Dist. LEXIS 11286 at *8.

5

Unlike the "actual disability" or "record of" prongs of the ADA, however, a "transitory and minor [impairment] . . . with an actual or expected duration of 6 months or less" does not qualify under the ADA's "regarded as" prong. 42 U.S.C. § 12102(3)(B); *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, No. 16-3986, 2017 U.S. App. LEXIS 13596, at *17 (3d Cir. July 27, 2017). Plaintiff, however, has pled sufficient facts to give rise to a reasonable inference that his impairment was not transitory and minor. In *Butler v. BTC Foods, Inc.*, the court ruled that a hernia whose complications lasted seven months constituted a disability under the ADA. 2014 U.S. Dist. LEXIS 11286 at *8. Similarly, in *Berkowitz v. Oppenheimer Precision Prods.*, No. 13-4917, 2014 U.S. Dist. LEXIS 152533, at *9 (E.D. Pa. Oct. 28, 2014), plaintiff's hernia continued to substantially limit major life activities for five years.

Although the First Amended Complaint in this case is silent as to the projected length of plaintiff's claimed disability, he has pled sufficient facts to infer that his impairment may plausibly persist for six months or more. Defendant may be able to show after discovery that plaintiff's impairment did not last beyond six months, but drawing all reasonable inferences in favor of plaintiff, as it must, the Court rejects defendant's argument on this issue.

Next, the Court turns to defendant's argument that plaintiff's impairment did not substantially limit a major life activity. Whether an impairment "substantially limits" a major life activity under the "actual disability" or "record of" prong is "not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i), (iii); *Butler v. BTC Foods, Inc.*, 2014 U.S. Dist. LEXIS 11286, at *8; *Eastman v. Research Pharm., Inc.*, No. 12-2170, 2013 U.S. Dist. LEXIS 107935, at *31 (E.D. Pa. July 31, 2013). An impairment "need not prevent . . . or significantly or severely restrict" a major life activity as long as the impaired individual is substantially limited "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The statute

provides a non-exhaustive list of major life activities, including, but not limited to "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Ultimately, "whether an individual is substantially limited in a major life activity is a question of fact." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759 (3d Cir. 2004).

In the First Amended Complaint, plaintiff has adequately pled that his hernia substantially impaired his ability to stand, walk, and lift, all of which constitute major life activities under the ADA. More specifically, he alleges that he suffered from "severe abdominal pain and difficulty with bending and lifting." Am. Compl. ¶ 12. Plaintiff further alleges that defendant's own physician "limited [plaintiff] to light duty work until further notice." Am. Compl. ¶ 14. These allegations support a reasonable inference that plaintiff's impairment "substantially limited" a major life activity.

Other courts have similarly found that a hernia may substantially limit a major life activity. In *Butler v. BTC Foods, Inc.*, defendant moved for summary judgment, arguing plaintiff's impairment did not "substantially limit[]" a major life activity. 2014 U.S. Dist. LEXIS 11286 at *8. In response, the *Butler* plaintiff provided evidence, comprised primarily of his own testimony, that due to his hernia and subsequent hernia surgery, "he suffered pain and had difficulty with both 'bending' and 'lifting'" and "that seven months after his surgery he continued to experience some sharp pains when walking or when he bent down for certain periods of time." *Id.* at *9. In rejecting defendant's motion for summary judgment, the *Butler* court conceded that it was ruling on a "fairly limited body of evidence." *Id.* Nonetheless, "pursuant to the stated intent of the ADAAA and the statute's command to construe 'disability'

7

broadly," the court ruled that plaintiff had established a material question sufficient to survive summary judgment. *Id.* (internal quotations omitted).

Similarly, the court in *Berkowitz v. Oppenheimer Precision Prods*, ruled that plaintiff had provided sufficient evidence that his hernia "substantially limit[ed]" a major life activity. U.S. Dist. LEXIS 152533, at *9. In that case, plaintiff's evidence included doctors' reports stating that he continued to suffer complications from a hernia sustained five years earlier. *Id.* Plaintiff also testified that he still had difficulty lifting, sitting, and standing. *Id.* at *10. Because the post-amendment ADA requires a "less searching analysis of whether a plaintiff is substantially limited," the *Berkowitz* court held that doctors' reports and plaintiff's testimony were sufficient to establish "a material question as to whether the major life activities of lifting, sitting, and standing are substantially limited." *Id.* at *9, 11.

Although the Motion before this Court is one for dismissal—and thus decided under a different standard than summary judgment—*Butler* and *Berkowitz* are instructive. The standard for "substantially limits" under the post-amendment ADA is not meant to be demanding. As the courts in *Butler* and *Berkowitz* recognized above, a hernia may well substantially limit major life activities of sitting, standing, and lifting. Under the standard for a motion to dismiss, a plaintiff need only allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In this case, plaintiff has adequately alleged sufficient facts showing his impairment substantially limited a major life activity to qualify as disabled under the "actual disability" and "record of" prongs of the ADA.

Defendant also argues that "Plaintiff has presented no evidence—none—that Defendant regarded Plaintiff as disabled." Doc No. 12-1 at 9. The Court rejects this argument. Following passage of the ADAAA, a plaintiff satisfies the requirements for the "regarded as" prong of the

ADA if he establishes he was discriminated against "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Consequently, to show defendant regarded him as disabled, a plaintiff is not required to show the defendant believed the impairment to be substantially limiting, but only that the defendant "knew of the purported disability." *Rubano v. Farrell Area Sch. Dist.*, 991 F. Supp. 2d 678, 693 (W.D. Pa. 2014); *accord Mengel v. Reading Eagle Co.*, No. 11-cv-6151, 2013 U.S. Dist. LEXIS 45300, at *14 (E.D. Pa. Mar. 29, 2013).

Plaintiff in this case has pled facts sufficient to give rise to an inference that defendant knew of the purported disability and regarded plaintiff as disabled. In particular, defendant's own company physician examined plaintiff, concluded he suffered a hernia, "pending diagnosis," and placed plaintiff on light work duty as a result. The physician then assisted plaintiff in filing his worker's compensation claim. These allegations are sufficient to reasonably infer that defendant knew of the purported disability and regarded plaintiff as disabled.

Finally, defendant argues that plaintiff's "self-serving" allegations, without a supporting medical diagnosis, are "insufficient to find that he is a qualified individual with a disability under the ADA." Doc. No. 12-1 at 8. Defendant is importing the requirements of a motion for summary judgment into a motion to dismiss. "As a general proposition, conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (citation omitted) (internal quotation omitted); *see also Jones v. United Parcel Service*, 214 F.3d 402, 407 (3d Cir. 2000) ("At summary judgment, a plaintiff cannot rely on unsupported allegations, but must go beyond pleadings."). In a motion to dismiss, however, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is

9

very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). Defendant has pointed to no case law to support its claim that plaintiff must provide evidence of medical diagnosis to survive a motion to dismiss. At this stage, plaintiff need only supply factual allegations supporting a plausible claim to relief, and plaintiff in this case has met that burden.

### 2. *Disability Under the PHRA*

Plaintiff also asserts a claim for disability discrimination under the PHRA. Defendant argues, as above, that a temporary, correctable impairment does not constitute a disability under the PHRA. The parties agree that the PHRA is interpreted consistently with the ADA. Prior to passage of the ADAAA in 2008, this was true—both state and federal courts interpreted the ADA and PHRA consistently, applying the federal standard for liability to claims under the PHRA, "except where there is something specifically different in [the statutory] language requiring that it be treated differently." *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002); *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir. 1996). In 2008, however, Congress amended the ADA to "relax the standard of disability," substantially altering the related statutory provisions. *Rubano*, 991 F. Supp. 2d at 689 n.7; *accord Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc.*, No. 10-cv-03694, 2012 U.S. Dist. LEXIS 68852, at *9 n.3 (E.D. Pa. May 17, 2012). The Pennsylvania legislature has not passed parallel legislation. *Rubano*, 991 F. Supp. 2d at 689 n.7; *accord Deserne*, 2012 U.S. Dist. LEXIS 68852, at *9 n.3. Consequently—and despite the parties' agreement otherwise—it is necessary to refer to interpretations of the pre-amendment ADA in construing the definition of "disability" under the PHRA. *Rubano*, 991 F. Supp. 2d at 689 n.7. As noted above, the pre-amendment ADA excluded impairments lasting or expected to last less than six months as constituting a "disability." *Sulima*, 602 F.3d at 185.

Nonetheless, as detailed above, plaintiff in this case has pled sufficient facts to give rise to a reasonable inference that his impairment lasted longer than six months. This is sufficient for plaintiff's claims for disability discrimination under the PHRA to survive a motion to dismiss.

3. *Treatment of Similarly Situated Individuals*

Defendant further argues that plaintiff has failed to show that similarly situated individuals were treated differently and consequently has failed to show that defendant's proffered reasons for terminating him were pretextual.[2] Defendant's argument fails for three reasons.

First, a showing that the defendant treated similarly situated individuals differently has been "explicitly rejected" by the Third Circuit as a necessary element in a discrimination suit. *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 n.7 (3d Cir. 2003). The Third Circuit has "made clear that this element can be present but by no means must be present." *Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir. 1997). Instead, the Third Circuit requires plaintiffs to more generally "raise an inference of unlawful discrimination." *Sarullo*, 352 F.3d at 797 n.7. Consequently, this Court rejects the argument that the First Amended Complaint must be dismissed for failure to plead that defendant treated similarly situated individuals differently.

Second, although treatment of similarly situated individuals may be relevant to show the defendant's proffered reasons for terminating plaintiff were pretextual, the need to show pretext is not applicable at this stage in the proceedings. *Bartlett v. Kutztown Univ.*, No. 13-4331, 2015

---

[2] Defendant also contends among his arguments regarding pretext that "[b]y his own admission, Plaintiff failed to meet Defendant's legitimate expectations for continued employment." Defendant's argument is based off a misreading of the First Amended Complaint. Plaintiff alleges he received satisfactory performance ratings and defendant "unjustifiably" reprimanded him. Am. Compl. ¶¶ 11, 16. The Court thus rejects defendant's argument on this point.

11

U.S. Dist. LEXIS 21665, at *25 n.11 (E.D. Pa. Feb. 23, 2015). The need to show pretext arises in the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In that framework, a plaintiff in an employment discrimination suit must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000) (quoting *Jones v. Sch. Dist.*, 198 F.3d 403, 410 (3d Cir. 1999)). A plaintiff may show pretext by offering evidence that "the employer treated other, similarly situated persons not of his protected class more favorably." *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 521 (3d Cir. 2003); *accord Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

The *McDonnell Douglas* framework, however, is not applicable in a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) ("This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.") This is because the *McDonnell Douglas* framework focuses on "the quantum of proof [a] plaintiff must present" to prove a claim of employment discrimination. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)). A motion to dismiss under Rule 12(b)(6), however, focuses not on what a plaintiff "can prove" but on what he has "pleaded." *Fowler*, 578 F.3d at 213. "Even post-*Twombly*, it has been noted that a plaintiff is not required to establish the elements of a prima facie case" to survive a motion to dismiss. *Fowler*, 578 F.3d at 213. The *McDonnell Douglas* framework is consequently not applicable to a motion to dismiss, and requiring the plaintiff to show pretext

before the completion of fact discovery would "put the cart before the horse." *Connelly*, 809 F.3d at 789; *accord Bartlett*, 2015 U.S. Dist. LEXIS 21665, at *25 n.11.

A third reason compels the Court to reject defendant's argument on this issue: plaintiff has adequately pled that defendant treated similarly situated individuals differently. Although "favorable treatment outside the protected class is not an element of a prima facie case" of discrimination, a plaintiff may argue that similarly situated individuals outside the protected class were treated differently to "raise[] an inference of discriminatory animus." *Sarullo v. United States Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). In the First Amended Complaint, plaintiff pleads that his "actions in repairing said meat cart were consistent with the common practice for similar repairs . . . [and] similarly-situated non-disabled individuals were not likewise reprimanded and/or terminated for conducting meat cart repairs in said manner." Am. Compl. ¶ 17. Plaintiff's allegation that he was following a common, unwritten practice for repairing meat carts is sufficient to establish a plausible inference that he was treated differently than similarly situated individuals.

### B. Retaliation

#### 1. Causal Connection Between Request for Accommodation and Termination under the ADA and PHRA

Defendant argues that plaintiff cannot maintain a cause of action for retaliation under the ADA or PHRA because he cannot show (1) that he engaged in a protected activity or (2) that there was a causal nexus between his termination and the protected activity. To establish a claim of retaliation under the ADA or PHRA, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the

employer's adverse action." *Shaner*, 204 F.3d at 500; *Rubano*, 991 F. Supp. 2d at 704 (holding that retaliation claims under the ADA and PHRA are analyzed under the same standard).

Defendant's arguments are misplaced. First, plaintiff has adequately pled he participated in a protected activity. "Requesting an accommodation on account of a disability amounts to a protected activity," without having to institute formal administrative or judicial proceedings. *Jackson v. J. Lewis Crozer Library*, 445 F. App'x 533, 536 (3d Cir. 2011) (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010)). "[I]t would seem anomalous . . . to think Congress intended no retaliation protection for employees who request a reasonable accommodation unless they also file a formal charge." *Shellenberger v. Summit Bancorp.*, 318 F.3d 183, 191 (3d Cir. 2003) (quoting *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir. 1997)). In this case, plaintiff has pled that he requested an accommodation for his impairment and was placed on light duty work as a result. Am. Compl. ¶¶ 14, 16. These allegations are sufficient to raise a reasonable inference that plaintiff requested an accommodation and engaged in a protected activity.

Second, plaintiff has adequately pled a causal connection between the protected activity and his termination. "[I]n the ADA retaliation context . . . temporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link." *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004). In particular, plaintiff alleges that defendant fired him two days after he was injured and "requested a reasonable accommodation." Am. Compl. ¶ 16. The temporal proximity of the request for accommodation and plaintiff's termination is sufficient to give rise to an inference of a causal connection between the two.

14

The Third Circuit has affirmed the inference of a causal connection on similar facts. In *Jalil v. Avdel Corp.*, 873 F.2d 701, 709 (3d Cir. 1989), the Third Circuit reversed the grant of a defendant's motion for summary judgment on a claim with identical temporal proximity. In that case, plaintiff's employer fired him two days after it learned that he had filed a grievance with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 703. The employer in that case argued that it fired plaintiff for "gross insubordination" following a dispute over plaintiff's use of a radio headset while working. *Id.* The Third Circuit held that the two days between the employer's receipt of the EEOC complaint and plaintiff's termination "justif[ied] an inference of retaliatory motive." *Id.* at 708 (citing *Burrus v. United Tele. Co.*, 683 F.2d 339, 343 (10th Cir.)). The *Jalil* court further stated that the timing of the discharge coupled with "the absence of a written rule against radio headsets and the presence of a dispute whether there was an unwritten rule" sufficed to create an issue of material fact to survive a motion for summary judgment. *Id.* at 709; *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 285–86 (3d Cir. 2000) (holding that time of three or four weeks between plaintiff's rejection of sexual advances by another member of management and her termination was "suggestive" of a "causal link").

Plaintiff in this case has alleged facts similar to those presented in *Jalil*. The passage of only two days in this case gives rise to a reasonable inference that there was a causal connection between the protected action and the termination. Further, plaintiff in this case has also alleged that there was no written policy regarding cleaning of the meat carts and that he was following a common practice among other employees. These allegations are sufficient to establish an inference of a causal connection between plaintiff's request for accommodation and his termination.

*2. Causal Connection Between Worker's Compensation Claim and Termination Under Pennsylvania Common Law*

As with the retaliation claims under the ADA and PHRA, defendant argues plaintiff has not sufficiently alleged a causal nexus between the filing of his worker's compensation claim and his termination to sustain a claim for wrongful termination under Pennsylvania common law. In Pennsylvania, "[a]n employee may bring a cause of action for a termination of [his employment] only in the most limited circumstances, where the termination implicates a clear mandate of public policy." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009). In order for the goals of the Pennsylvania Workers' Compensation Act "to be realized and for public policy to be effectuated, the employee must be able to exercise his right in an unfettered fashion without being subject to reprisal. If employers are permitted to penalize employees for filing workmen's compensation claims, a most important public policy will be undermined." *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998) (quoting *Frampton v. Central Indiana Gas Company*, 297 N.E.2d 425, 427 (1973)). Although Pennsylvania courts hearing wrongful discharge claims have "deliberately eschewed a general test like that used in" federal retaliation claims in favor of an "analy[sis] on a case-by-case basis," a plaintiff must still show causation between the filing of a worker's compensation claim and his termination. *Owens v. Lehigh Valley Hosp.*, 103 A.3d 859, 869 (Pa. Commw. Ct. 2014). Plaintiff in this case has done so.

As discussed above, the timing between the protected activity—the filing of the worker's compensation claim—and plaintiff's termination gives rise to a plausible inference of a causal connection between the two. *Williams*, 380 F.3d at 760; *Farrell*, 206 F.3d at 280–81. Defendant further argues, however, that plaintiff cannot sustain his claim of retaliation for filing a worker's compensation claim because plaintiff admits in the First Amended Complaint that defendant's company physician "assisted" with plaintiff's worker's compensation claim. Defendant has

16

pointed to no case law ruling that an employer's assistance in filing a worker's compensation claim precludes a court from finding that the employer later retaliated against the employee for filing that claim. Such a rule would allow employers to contravene policies protected by Pennsylvania common law. Based on the allegations of the First Amended Complaint, it is reasonable to infer that although defendant's company physician assisted plaintiff in filing his worker's compensation claim, those responsible for plaintiff's termination nonetheless terminated him for filing that claim. Plaintiff need only allege facts to establish such a reasonable inference, and he has done so in this case.

## V. CONCLUSION

For the above reasons, defendant's Motion to Dismiss Plaintiff's First Amended Complaint is denied. An appropriate order follows.